IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | CRIMINAL COMPLAINT |
| vs. | |
| | No.   2:20-CR-023 |
| DEVECCHO WALLER, JR., | |
|     Defendant. | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF EMERGENCY
MOTION TO RETURN MR. WALLER TO LOCAL JURISDICTION**

COMES NOW the Defendant in the above styled matter, MR. DEVECCHO WALLER, JR. (hereinafter referred to as "Mr. Waller"), by and through counsel and hereby files this Supplemental Brief in Support of Emergency Motion to Return to Local Jurisdiction at the Hall County Detention Center, and further shows this Court as follows:

Mr. Waller has previously filed an Emergency Motion to Return to Local Jurisdiction. [Doc 45]  This Court directed counsel for Mr. Waller to submit a supplemental brief to the motion [Doc 49, minute entry] addressing whether or not the Court has the authority to order the U.S. Marshall to return Mr. Waller to local custody or in the alternative whether there is authority to dissolve the Writ of *Habeas Corpus ad Prosequendum*. [Doc 18]

There have been a number of factual matters and procedural changes which have developed since the Court last heard from Mr. Waller; therefore, the questions presented may be altered slightly to address the current situation.

PROCEDURAL POSTURE

Mr. Waller was arrested on or about June 2, 2020 by the Gainesville Police Department in connection with the alleged flare gun burning of a municipal police car. He was detained in the Hall County Detention Center without bond and the case was turned over to the Hall County District Attorney's Office for prosecution. The case is still unindicted by the State of Georgia, which has primary jurisdiction.[1]

On the same date, the Government filed a federal "detainer" on Mr. Waller. The detainer[2] was filed to ensure he would not be released from state custody

---

[1] *See,* United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005) (explaining actual custody determines primary jurisdiction); Savvas Diacosavvas, Note, Vertical Conflicts in Sentencing Practices: Custody, Credit, and Concurrency, 57 N.Y.U. ANN. SURV. AM. L. 207, 210-12 (2000) (outlining priorities system of concurrent jurisdiction); Rachel A. Mills, Comment, Too Many Cooks Spoil the Sentence: Fragmentation of Authority in Federal and State Sentencing Schemes, 41 SETON HALL L. REV. 1637, 1637 (2011), at 1656-57 (discussing rules of concurrent state and federal jurisdiction).

[2] *See*, Carchman v. Nash, 473 U.S. 716, 719 (1985) (defining "detainer" as request to hold prisoner or notify agency prior to prisoner's release).

pending future federal charges.[3]  Also, on this date, the Hall County probation office placed a "detainer" on Mr. Waller for purportedly violating his probation[4] by committing this new offense.[5]  A detainer of this sort[6] invokes the "Interstate Agreement on Detainers," of which the United States is a party.[7]

Mr. Waller was indicted in federal court on June 16, 2020. [Doc 1]  The Government filed a Notice of *Praecipe* [Doc 13] directing the Clerk to issue an arrest warrant for Mr. Waller.  The indictment and subsequent arrest warrant were

---

[3]The federal government, therefore, has "secondary jurisdiction." *See*, Cole, *supra*.

[4]Mr. Waller is presently serving a 5 year probated sentence for Entering an Auto.  He entered a plea to get out of jail immediately and is considering whether to pursue appellate or collateral action challenging the conviction. When he was arrested for the instant matter, he was placed under a detainer by the Hall County Probation Office as a precursor to further incarceration on that felony sentence.  Therefore, he is serving a custodial sentence.

[5]Mr. Waller maintains his innocense and has entered a plea of not guilty to all charges in all courts.

[6]The Interstate Agreement on Detainers (IAD) does not apply to pretrial detainees.  *See*, United States v. Tummolo, 822 F. Supp. 1561 (S.D. Fla. 1993).  However, while Mr. Waller may be in a pretrial posture as to this federal case, he is not a pretrial detainee as to his superior court probation hold in Hall County.  The probation hold was filed prior to the issuance of the *writ of habeas corpus ad prosequendum*.  Therefore, the writ served to take control of Mr. Waller away from the probation detainer and does trigger the IAD.

[7]See, 18 U.S.C.A. § APP. 2 § 2

the basis for the Government to seek a federal writ of *habeas corpus ad prosequendum* from this Court.[8]

The Court issued the writ[9] and the U.S. Marshall took temporary control of Mr. Waller, relocating him to the Robert A. Deyton (RAD) Detention Center, a private prison in Lovejoy, Georgia. Mr. Waller had no notice of the application for or issuance of the writ, though the Court is authorized to conduct such a hearing with notice.[10] At an arraignment hearing on June 23, 2020, Mr. Waller conceded he was ineligible to request bond from this Court due to the fact that he was only present in federal court on a writ, and remained in the formal custody of Hall County.

Mr. Waller's counsel filed the instant Emergency Motion because meaningful communication had been impossible. Mr. Waller incorporates herein

---

[8] This writ is literally an order to bring a person to court for prosecution. *See*, Carbo v. United States, 364 U.S. 611, 615 (1961) (detailing history of writ *ad prosequendum*); *Ex parte* Bollman, 8 U.S. 75, 98 (1807) (defining writ *ad prosequendum*).

[9] It is unclear from the docket whether the Government ever submitted a petition for writ *ad prosequendum* – only that the writ did issue.

[10] *See*, 28 U.S.C.A. § 2243 "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

by reference all of the averments in the motion as if restated here in full.  Still, there are a number of new facts and circumstances which have arisen since the last hearing, which illuminate the questions presented.

### UPDATED FACTS AND CIRCUMSTANCES

The most significant new fact since the last hearing is this: **Mr. Waller has now been granted a Recognizance Bond in the Hall County Superior Court.**

Therefore, he may now be immediately eligible for a bond in this Court. Candidly, all questions presented would be rendered moot if the Court were to grant Mr. Waller a bond in this matter.

Mr. Waller does continue to have a probation violation detainer in the superior court, but that is before a third judge and his state counsel is seeking a probation bond.  The state prosecutor has opposed any bond.  Until such a probation bond is granted, Mr. Waller remains in the custody of Hall County.  If he is unable to have a hearing on the alleged probation violation and remains in limbo as to that detainer, he will continue to have his rights violated as to expeditious disposition of his detainer.[11]

---

[11] See, 18 U.S.C.A. § APP. 2 § 2, Interstate Agreement on Detainers which requires "expeditious" disposition of charges.

Other pertinent facts are:

a. counsel has spoken directly with the U.S. Marshall's office who informed counsel that the Hall County Sheriff's Office is not accepting federal detainees in their detention center. It is for this reason, the Marshall's office says, that Mr. Waller is detained in the private prison known as RAD;

b. the Marshall's office offered to assist in scheduling video visitation and informed counsel that the RAD information regarding necessity of a SIP connection was not proper and would address the problem directly;

c. soon after, RAD contacted counsel and offered a video visit using WebX; counsel was able to speak privately with Mr. Waller on July 31, 2020;

d. counsel has spoken directly with the inmate visitation coordinator at RAD who assured counsel that the middle of the three phones in the bonding area are not monitored or recorded; and

e. the RAD visitation coordinator has been much more responsive to requests for client contact.

Nevertheless, ease of client communication remains grossly inferior to that which would be available in the Hall County Detention Center.

These new facts shared with the Court should not be inferred as an abandonment of the motion or a waiver of objections to the interference with Mr.

Waller's Sixth Amendment rights.[12] A delay in access to counsel, later improved, remains a chief evil against which the Sixth Amendment is designed to avoid.[13]

## QUESTIONS PRESENTED:

1. Whether the Court can order the U.S. Marshall to return Mr. Waller to the Hall County Detention Center.

2. Whether the Court can dissolve its own *writ of habeas corpus ad prosequendum*, allowing Mr. Waller to return to Hall County.

## BRIEF ANSWERS:

1. It is unclear whether the Court has the authority to order Mr. Waller returned to local custody; however, it is clear that the Court may not order the U.S. Marshall to house a particular prisoner in a particular facility.

2. Yes. The Court may dissolve its own writ, maintain the prosecution, and allow Mr. Waller to be returned to address any other holds or detainers.

---

[12] To the extent that Mr. Waller's attorney communications were not, and in the future will not be, intercepted, counsel withdraws the enumeration of harm therefrom.

[13] Upon information and belief, co-defendant Smallwood still does not have appointed counsel in the superior court matter.

ARGUMENT AND CITATION OF AUTHORITY:

Part One:

This Court has the statutory authority to issue all writs necessary or appropriate in aid of its jurisdiction.[14] A writ is simply a court order to do something or refrain from something. Therefore, one could conclude that this Court has the authority to issue an order to return Mr. Waller to local custody if it determines such is necessary in aid of its jurisdiction; but it remains unclear.

The power of this Court to issue a writ *ad prosequendum* comes from the Common Law but has now been more or less codified by the All Writs Act and the enumerated Powers to Grant Writ statute.[15] The U.S. Marshall is duty bound to obey all lawful writs issued by this Court.[16] However, the Marshall also is a branch of the Executive authority of the United States.[17]

---

[14] "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See*, 28 U.S.C.A. § 1651

[15] 28 U.S.C. § 2241

[16] 28 U.S.C. §566

[17] *See*, Pa. Bureau of Correction v. U.S. Marshals, *ibid* at Footnote 1. "The Marshals are within the Executive Branch of the Federal Government. The Marshal for each district is appointed by the President, 28 U.S.C. 561(a), is subject to the supervision and direction of the Attorney General, see, e. g., 562, 567, 569(c), 571(a) and (d), and is funded through Department of Justice appropriations, e. g., 567."

Mr. Waller has learned of no statutory or case authority that specifically authorizes this Court to order him returned to the Hall County Detention Center based upon the remoteness of his detention from his lawyer, the Court, or the area of case investigation.  Neither has Mr. Waller learned of any specific authority for the Court to order him returned here based upon the denial of his right to communicate confidentially with counsel.

There is a case that, while not on point, contains *dicta* that casts a penumbra of doubt on this Court's authority to issue *ad hoc* writs for production of prisoners. In Pa. Bureau of Correction v. U.S. Marshals, 474 U.S. 34 (1985), the Supreme Court wrote,

> "The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate. We need not categorically rule out reliance on the All Writs Act and the use of Marshals in procuring or safeguarding state prisoner-witnesses in the course of federal litigation. There may be

exceptional circumstances in which a district court can show clearly the inadequacy of traditional habeas corpus writs, such as where there are serious security risks. In such circumstances, a district court may find it "necessary or appropriate" for Marshals to transport state prisoners. We therefore leave open the question of the availability of the All Writs Act to authorize such an order where exceptional circumstances require it."

There, a federal magistrate issued a writ *ad prosequendum* to the Pennsylvania Bureau of Corrections and ordered the federal marshal to take custody of state prisoners and bring them to the nearest federal courthouse. The state prisoners were not in the custody of the marshall or any party to the action over which the magistrate presided. The Bureau sued.

On appeal, the Supreme Court noted how odd it was for a state to be suing a federal marshal. Nevertheless, the Court ruled that the magistrate had no authority to issue the writ because it was not based upon an enumerated power in the statute. Because the prisoners were not in the custody of the marshall, and because the Bureau was not a party to the underlying action, the Court ruled that the magistrate was without jurisdiction to issue the writ.

Therefore, it appears the Court does not have an unlimited authority to issue a writ addressing Mr. Waller's particular circumstances without first carefully

considering whether the circumstances require an extraordinary remedy.

Part Two:

The Court may, however, dissolve its own writ *ad prosequendum* and allow Mr. Waller to be returned here to address any other holds or detainers.[18]  As stated above, Mr. Waller has two (2) separate state cases now pending, to wit: the new arson charge, and the companion probation violation charge.  The writ served to take control of Mr. Waller's person away from those custodial matters and commence a federal prosecution.  But there is another law that is in conflict with the principles of the writ – the Interstate Agreement on Detainers.

The purpose of the Interstate Agreement on Detainers (hereinafter referred to as the "IAD") is to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments[.]"[19]  In other words, the parties to the IAD agree that it would be unlawful to have a prisoner detained in one state with charges perpetually

---

[18] For an analysis of the inherent tensions between the writ *ad prosequendum* and the IAD, *see* O'Roark, "Saying 'No' After Pleau: Exploring the Conflict Between the Interstate Agreement on Detainers Act and the Federal Writ *Ad Prosequendum*." Suffolk University Law Review, Vol. XLVII:189.

[19] 18 U.S.C.A. § APP. 2 § 2

pending in another, without the right to a speedy trial.[20]

Prior to issuance of the writ, the Government and the Hall County Probation Office both placed detainers on Mr. Waller. When a detainer is issued for a person serving a sentence, the IAD is invoked.[21] The IAD applies to the United States.[22] The IAD defines "sending state" and "receiving state" axiomatically.

In the instant matter, Mr. Waller was "sent" by the Georgia authority and "received" by the United States authority in connection with the same set of facts. Because of the pending probation detainer, Mr. Waller was and is a person detained in a penal institution, within the meaning of Article III of the IAD.[23]

Special provisions apply when the receiving state is the United States.[24] By

---

[20]"This agreement shall be liberally construed so as to effectuate its purposes." See, Article IX, 18 U.S.C.A. § APP. 2 § 2

[21]See, U. S. v. Mauro, 436 U.S. 340, 361, 98 S. Ct. 1834, 1848, 56 L. Ed. 2d 329 (1978)

[22]"The Interstate Agreement on Detainers is hereby enacted into law and entered into by the United States on its own behalf and on behalf of the District of Columbia with all jurisdictions legally joining[...]" *See*, 18 U.S.C.A. § APP. 2 § 2

[23]See, Article III, Interstate Agreement on Detainers

[24]*See*, 18 U.S.C.A. § APP. 2 § 9
"Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State--
(1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following

its own terms, "any order of a court dismissing any indictment, information, or complaint may be with or without prejudice." What is a dismissal without prejudice but a dissolution of the writ *ad prosequendum*? There lies the statutory authority to dissolve the writ.[25]

Also by its own terms, "it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the United States and an opportunity for a hearing."[26]

Furthermore, the IAD provides, "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending

---

factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice; and (2) it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the United States and an opportunity for a hearing."

[25] It is axiomatic that a court which has the power to issue a writ, also has the power to dissolve same. The dockets are full of dissolutions of writs *ad testificandum*, writs of sequestration, writs of garnishment, and more. Unfortunately, counsel could not find an example of dissolution of a writ *ad prosequendum*.

[26] See, 18 U.S.C.A. § APP. 2 § 9

State."[27]  Therefore, Mr. Waller must be returned to the Hall County Detention Center at the earliest moment.

## CONCLUSION

While this Court may not be able to order the Marshal to bring Mr. Waller to the Hall County Detention Center, it can and should dissolve its writ ad prosequendum, dismiss the indictment without prejudice, and allow Mr. Waller to return to Gainesville to address his probation violation hold.

This 6th day of August 2020.


    */s/ Arturo Corso*
Arturo Corso
Georgia State Bar No. 188748
Attorney for Mr. Waller
*The Corso Law Center, LLC*
427 GREEN STREET, N.W.
GAINESVILLE, GEORGIA  30501
Telephone: (770) 532-9732
Facsimile: (770) 532-9733

---

[27] *See*, IAD, Article V, subparagraph e.

<u>Certificate of Service</u>

This is to certify that I have this day served a true and correct copy of the foregoing upon counsel for the Government by filing same upon the Court's CM/ECF Docket and causing it to be distributed to all parties and counsel of record.

This 6th day of August 2020.

*/s/ Arturo Corso*
Arturo Corso
Georgia State Bar No. 188748
Attorney at Law