IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | :     CRIMINAL INDICTMENT |
| | :     NO.:  2:20-CR-23-SCJ-JCF |
| DELVECCHO WALLER, JR. | : |

### ORDER

This case is before the Court on Defendant's Motion To Return Mr. Waller To Local Jurisdiction (Doc. 45) and Motion For Extension Of Time To Submit Supplemental Brief (Doc. 55).

### Factual And Procedural Background

Defendant was arrested and charged in Hall County, Georgia with state law criminal charges arising from the same June 2, 2020 allegations giving rise to the Indictment in this case, i.e., burning a City of Gainesville Police Department patrol unit, and on June 3, 2020 a Hall County Magistrate Judge ordered that he be held without bail.  (*See* Doc. 45 at 1; Doc. 47-1 at 1; Doc. 61 at 1).  Defendant was then held at the Hall County Detention Center.  (Doc. 56 at 2).  The Hall County Probation Office also issued a probation violation warrant for Defendant's arrest, and according to Defendant, the Hall County probation office placed a "detainer" on Defendant for violating his probation based on the new offenses.  (Doc. 56 at 3; Doc. 61 at 1).  On June 16, 2016, the Government filed an Indictment in this Court

1

charging Defendant, along with his co-defendants Jesse James Smallwood, Bruce Thompson, Judah Coleman Bailey, and Dashun Martin, with conspiracy "to maliciously damage and destroy, by means of fire and explosive materials" a City of Gainesville Police Department patrol unit (Count One) and arson (Count Two). (Doc. 1). On the same day, the Court entered a Writ Of Habeas Corpus Ad Prosequendum, which commanded "[a]ny U.S. Marshal, Warden, Hall County Jail, and/or any other authorized officer" that Defendant be detained before the undersigned for a videoconference at 1 p.m. on June 23, 2020 "and from day to day thereafter until discharged by the Court, then and there to be arraigned/tried on the indictmen[t] and receive and abide by the judgment of this Court in [this] case, thence to be returned to the custody from which he came, and have you this writ." (Doc. 18).[1] Although this Court issued an arrest warrant for Defendant, it was returned unexecuted "due to [Defendant] being processed on a WRIT." (Doc. 38). The Court held an initial appearance and arraignment on June 23, 2020, at which time the Court noted "Def[endants] are not eligible for consideration of release on bond by this Court at this time since they appeared on a writ and remain in state custody." (Doc. 30-1). Defendant is now being held at the Robert A. Deyton Detention Center (RAD) in Lovejoy, Georgia, approximately 80 miles south of Gainesville, Georgia. (Doc. 45 at 2). Defendant's counsel states that the U.S.

---

[1] The Court issued writs for the other defendants as well. (*See* Docs. 17, 19-22).

Marshal's office has informed him that Defendant is being housed at RAD because the Hall County Sheriff's Office is not accepting federal detainees in the Hall County Detention Center. (Doc. 56 at 6).

On July 8, 2020, Defendant filed a Motion To Return Mr. Waller To Local Jurisdiction (Doc. 45), requesting that Defendant be returned to the Hall County Detention Center or "[i]n the alternative to immediately bring [him] to the United States Courthouse in Gainesville each and every time that his counsel desires to meet with [him], place him in a conference room, provide suitable food/beverage in accordance with standing feeding times for detainees, and allow him to remain for the duration of the meeting as determined by his counsel[.]" (*Id*. at 7). The Government responded to Defendant's motion on July 20, 2020 (Doc. 47), and Defendant submitted a reply (Doc. 48). The Court then held a conference with counsel on July 28, 2020, during which the Court questioned whether the Court has the authority to order the U.S. Marshal to return Defendant to the Hall County Detention Center, or alternatively, whether the Court has the authority to dissolve the writ. (*See* Doc. 49; Doc. 56 at 1). The Court then directed the parties to provide supplemental briefs on Defendant's motion. (*See* Doc. 49).

Defendant filed a supplemental brief on August 6, 2020 (Doc. 56)[2] in which he stated, among other things, that the Hall County Superior Court had granted him a recognizance bond (*id*. at 5).  Defendant posited that "he may now be immediately eligible for a bond in this Court," and that "all questions presented would be rendered moot if the Court were to grant [him] a bond in this matter." (*Id.*).  He conceded that he "continue[s] to have a probation violation detainer in the superior court, but that is before a third judge and his state counsel is seeking a probation bond," which the state prosecutor opposed.  (*Id*). Defendant otherwise conceded that the Court cannot order the U.S. Marshal "to house a particular prison in a particular facility," but contends that "[t]he Court may dissolve its own writ, maintain the prosecution, and allow [Defendant] to be returned to address any other holds or detainers." (*Id*. at 7).  The Government responded to Defendant's supplemental brief with respect to whether the Court can and should dissolve the writ, but the Government did not respond to Defendant's assertion that he "may now be eligible for a bond in this Court" in light of receiving a bond in state court. (Doc. 58).  The Court therefore held a conference with counsel on August 21, 2020 to discuss whether the Court can hold a detention hearing for Defendant and directed the parties to provide supplemental briefing on that issue. (Doc. 60). The Government filed its supplemental brief on August 27, 2020 (Doc. 61) and

---

[2] Defendant's motion for extension of time to submit his supplemental brief (Doc. 55) is **DENIED AS MOOT** because he timely filed the brief.

4

Defendant filed his brief the next day (Doc. 62).  With briefing complete, the Court now considers the merits of Defendant's motion.

## Discussion

**I.     Motion To Direct That Defendant Be Returned To Hall County**

Defendant requests that the Court direct that he be returned to the Hall County Detention Center due to difficulties related to the distance his attorney—who is located in Gainesville, Georgia—must travel to meet with his client as well as difficulties his attorney has had communicating with Defendant at the RAD facility, including difficulties scheduling meetings with his client through RAD personnel; limited interview rooms; prohibitions on in-person visits due to COVID-19; technical difficulties with telephone and Zoom calls; difficulties having private communications; and the possibility that a telephone call between Defendant and his attorney was recorded.  (*See generally* Docs. 45, 48).  Defendant concedes, however, that "it is clear that the Court may not order the U.S. Marshal[] to house a particular prisoner in a particular facility."  (Doc. 56 at 7).  He also candidly acknowledged that he "has learned of no statutory or case authority that specifically authorizes this Court to order him returned to the Hall County Detention Center based upon the remoteness of his detention from his lawyer, the Court, or the area of case investigation," or "any specific authority for the Court to

order him returned here based upon the denial of his right to communicate confidentially with counsel." (*Id*. at 9).

While the Court notes counsel's concerns raised in Defendant's motion concerning the time and expense involved in traveling to Lovejoy to meet with his client, Defendant has not provided authority to support his motion that he be returned to the local jurisdiction barring dissolution of the writ that is the basis for the U.S. Marshal holding Defendant, an issue discussed below.  As for the difficulties counsel described in meeting with Defendant at RAD, counsel represented on August 6, 2020 that the Marshal's office "offered to assist in scheduling video visitation and informed counsel that the RAD information regarding necessity of a SIP connection was not proper and would address the problem directly"; "RAD contacted counsel and offered a video visit using WebX," and counsel was able to speak privately with his client on July 31, 2020; "counsel has spoken directly with the inmate visitation coordinator at RAD who assured counsel that the middle of the three phones in the bonding area are not monitored or recorded"; and "the RAD visitation coordinator has been much more responsive to requests for client contact."  (Doc. 56 at 6).  Notwithstanding these improvements in his ability to communicate with his attorney, Defendant asserts that "ease of client communication remains grossly inferior to that which would be available in the Hall County Detention Center" and that these "new facts . . .

6

should not be inferred as an abandonment of the motion or a waiver of objections to the interference with [his] Sixth Amendment rights." (*Id*. at 6-7). The Court finds that Defendant has not demonstrated that his Sixth Amendment rights to counsel have not been violated or that the described communication difficulties support his request to be transferred from RAD.

Defendant's motion for an order directing that he be transferred back to the Hall County Detention Center (Doc. 45) is **DENIED**.[3] If Defendant has continued difficulties communicating with his attorney while he is housed at RAD, he may bring those difficulties to the Court after consultation with the U.S. Marshal, the Assistant United States Attorney, and/or RAD personnel in an effort to resolve those issues.[4]

---

[3] Defendant's alternative request that the U.S. Marshals bring him "to the United States Courthouse in Gainesville each and every time that his counsel desires to meet with [him], place him in a conference room, provide suitable food/beverage in accordance with standing feeding times for detainees, and allow him to remain for the duration of the meeting as determined by his counsel" (Doc. 45 at 7) is also **DENIED** as he has not shown that the conditions at RAD warrant the required use of the U.S. Marshal's resources to provide such relief.

[4] Counsel asserted on August 27th that "those problem have returned," i.e., the RAD telephone systems were down for most of last week. It has taken 3 days to get a response to my request for an in-person visit. Counsel will now have to travel to RAD on the weekend to timely confer with [Defendant] regarding the matters presented in this brief and responsive brief." (Doc. 62 at 1-2). It is not clear that technical difficulties involving RAD's phone system indicates that the problems described in Defendant's motion have continued or whether the phone issues have continued, so the parties should work together to make sure that Defendant and his counsel are able to adequately communicate. If communication

## II. Request To Dissolve The Writ

"Habeas corpus *ad prosequendum*, a writ derived from English common law, has historically been 'issue[d] when it [wa]s necessary to remove a prisoner, in order to prosecute . . . in any court, or to be tried in the proper jurisdiction wherein the fact was committed.' " *United States v. Kelly*, 661 F.3d 682, 686 (1st Cir. 2011) (quoting 3 William Blackstone, *Commentaries*, *130). "The writ is 'issued directly by a court of the jurisdiction where an indictment, information, or complaint has been lodged against the prisoner.' " *Id.* (quoting *Stewart v. Bailey*, 7 F.3d 384, 389 (4th Cir. 1993)). "It operates as 'a court order requesting the prisoner's appearance to answer charges in the summoning jurisdiction.' " *Id.* (quoting *Stewart*, 7 F.3d at 389). "The writ of habeas corpus *ad prosequendum*, like other writs of habeas corpus, is issued to the custodian of the detained individual." *Id*.

"When state and federal authorities exercise jurisdiction over a person at the same time, 'primary jurisdiction is generally determined by which one first obtains custody of, or arrests, the person.' " *Elwell v. Fisher*, No. 11-2595 (RHK/LIB), 2012 U.S. Dist. LEXIS 84823, at *9 (D. Minn. Apr. 25, 2012) (quoting *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005)), *adopted by* 2012 U.S. Dist. LEXIS 83666 (D. Minn. June 18, 2012). "Primary jurisdiction continues with the

---

continues to be a problem, Defendant should file the appropriate motion and the Court will consider whether it should hold a hearing on those issues.

first sovereign to have actual physical custody of the person until the first sovereign 'relinquishes its priority in some way' such as release on bail, dismissal of charges, parole, or expiration of the sentence." *Id*.  In this case, Georgia arrested Defendant first and was the first sovereign to have actual physical custody of him; Georgia thus has primary jurisdiction and retains primary custody of him. *See, e.g.*, *Bonds v. United States*, No. 2:13cv542-WKW (WO), 2015 U.S. Dist. LEXIS 123550, at *22 (M.D. Ala. Aug. 20, 2015) ("Although federal authorities took temporary custody of Bonds pursuant to the writ of *habeas corpus ad prosequendum* on the federal drug charges, the State of Georgia still retained primary custody of him," and he "remained in custody of the Georgia authorities during the time he was transferred for prosecution on the federal charges."), *adopted by* 2015 U.S. Dist. LEXIS 122577 (M.D. Ala. Sept. 15, 2015).  "Issuance of a writ of habeas corpus *ad prosequendum*, in order to transfer a prisoner for prosecution in the proper jurisdiction, 'd[oes] not alter [the defendant's] custody status.  It merely change[s] the location of his custody.' "  *Elwell*, 2012 U.S. Dist. LEXIS 84823, at *9 (quoting *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir. 1994)). Courts have repeatedly stated that when a prisoner is transferred from the sovereign with primary jurisdiction to the requesting sovereign by writ of habeas corpus ad prosequendum, the prisoner is simply "on loan" to the requesting sovereign, in this case the United States.  *See, e.g.*, *Kelly*, 661 F.3d at 686; *United*

*States v. Hayes*, 535 F.3d 907, 910 (8th Cir. 2008); *Thomas v. Brewer*, 923 F.2d 1361, 1367 (9th Cir. 1991); *Causey v. Civiletti*, 621 F.2d 691, 693 (5th Cir. 1980); *Crawford v. Jackson*, 589 F.2d 693, 695-96 (D.C. Cir. 1978); *Walker v. Warden, FCC Coleman, USP II*, No. 5:18-cv-123-Oc-02PRL, 2019 U.S. Dist. LEXIS 31142, at *8-9 (M.D. Fla. Feb. 27, 2019); *Hilton-Thomas v. Hastings*, No. CV213-030, 2013 U.S. Dist. LEXIS 143333, at *6 (S.D. Ga. June 17, 2013).

In an effort to resolve the issues raised in Defendant's motion, during the July 28th teleconference the Court requested the parties to address the Court's authority to dissolve the writ and return Defendant to the physical custody of Hall County, where presumably he would be housed in the Hall County Detention Center as he requests until or unless the state released him on a bond or by other means, at which time a federal detainer could dictate that he would return to federal custody on the pending federal charges.  (*See* Doc. 49).  Defendant asserts in response that "[t]he Court may dissolve its own writ, maintain the prosecution, and allow [him] to be returned to address any other holds or detainers."  (Doc. 56 at 7).  Defendant challenges the issuance of the writ in the first place on the grounds of lack of "substantive or procedural due process regarding the issuance of this writ as required under the Fourteenth Amendment to the U.S. Constitution," and he "hereby lodges his official objection to the denial of said due process." (Doc. 59 at 2).  Defendant argues that the denial of due process "is particularly

significant insofar as the Government now argues that the writ serves to hold his body continuously without bond until the federal case is completely resolved," so that "the Government would provide no pre-issuance OR post-issuance review of the Court's granting of the Government's petition for the writ." (*Id.*).  The Court disagrees.

In the first place, "[a]s the affected prisoner, [Defendant] lacks standing 'to attack the issuance and operation of the writ of habeas corpus ad prosequendum.' " *Murphy v. Cent. Falls Det. Facility Corp.*, No. 14-203S, 2014 U.S. Dist. LEXIS 183690, at *43-44 (D. R.I. Dec. 16, 2014) (quoting *Derengowski v. U.S. Marshal*, 377 F.2d 223, 224 (8th Cir. 1967) and collecting cases), *adopted by* 2015 U.S. Dist. LEXIS 56723 (D. R.I. Apr. 30, 2015).  "A writ of habeas corpus ad prosequendum is 'a question of comity affecting the two governments' and 'involves no personal right of the prisoner.' " *Id*. at *44 (quoting *McDonald v. United States*, 403 F.2d 37, 38 (5th Cir. 1968)[5]).  Defendant posits that "the correct way to use such a writ is when a state prisoner has already reached finality of conviction in the state system and then and only then the Gov[ernment] desires to commence a prosecution.  In such a procedural posture, an accused in federal court would have no pending matter in the state system other than the service of a

---

[5] Decisions of the Fifth Circuit handed down before Oct. 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

11

sentence." (Doc. 59 at 2-3). But "the Eleventh Circuit has long recognized . . . 'that a prison has no standing to contest an agreement between two sovereigns concerning the temporary exchange of custody of the prisoner on a writ of habeas corpus prosequendum or their agreement as to the order of his prosecution and execution of sentences.' " *Moody v. Stewart*, No. 18-00063-CG-B, 2018 U.S. Dist. LEXIS 235889, at *21-22 (S.D. Ala. Mar. 22, 2018) (quoting *Chunn v. Clark*, 451 F.2d 1005, 1006 (5th Cir. 1971) and collecting cases)[6]; *see also Murphy*, 2014 U.S. Dist. LEXIS 183690, at *44 (" 'Thus, a defendant is without standing to pursue a claim regarding the priority of custody between two sovereigns,' " and "[o]nly Massachusetts has the authority to challenge the operation of the Writ and require Murphy's return to its custody[.]" (quoting *United States v. Hill*, No. 07-371, 2011 U.S. Dist. LEXIS 59255, at *6 (W.D. Pa. June 21, 2011))). There is no evidence or representation that Georgia has requested Defendant's return in this case.

Moreover, Defendant has not provided a legal or factual basis showing why the Court should dissolve the writ. Defendant contends that the Court has the

---

[6] In *Moody v. Warden, Holman CF*, 887 F.3d 1281 (11th Cir. 2018), the Eleventh Circuit explained that this lack of "standing" does not refer to Article III standing, and the court went on to hold that the defendant did not have a cognizable right to demand that the first sovereign, in that case the federal government, retain custody of him until he finished his federal life sentence before relinquishing custody of him to the requesting jurisdiction, the state of Alabama, for execution on his state conviction where the United States did not object to Alabama retaining custody. In this case, Georgia has not objected to the United States retaining physical custody of him.

authority to dissolve the writ if the case is dismissed without prejudice and urges the Court to "dismiss the indictment without prejudice," dissolve the writ, and "allow [him] to return to Gainesville to address the probation violation hold" (Doc. 56 at 12-14), but he has not provided any basis for the Court to dismiss the Indictment at this point.[7]

Defendant also makes arguments concerning the Interstate Agreement on Detainers (IAD) (*see generally* Doc. 56), but "[a] writ of habeas corpus *ad prosequendum* is not a detainer and did not change [Defendant's] status as being in the custody of the State of Georgia at the time he was 'borrowed' on the writ." *Taylor v. Rathman*, No. 1:12-cv-01689-VEH-JEO, 2014 U.S. Dist. LEXIS 120800, at *7 (N.D. Ala. Aug. 29, 2014) (citing *United States v. Mauro*, 436 U.S. 340, 358-61 (1978) (holding that a writ of habeas corpus ad prosequendum is not a detainer for purposes of the IAD)); *see also United States v. Ragland*, No. 09-14016-CR-MOORE/LYNCH(s), 2009 U.S. Dist. LEXIS 139106, at *9 (S.D. Fla. June 19, 2009) ("explaining that "Writs of Habeas Corpus Ad Prosequendum are not considered detainers under the Interstate Agreement on Detainers Act").

Accordingly, Defendant's request that the Court dissolve the writ of habeas corpus ad prosequendum is **DENIED**.

### III.   Request For Detention Hearing

---

[7] Defendant has until October 5, 2020 to file his pretrial motions. (*See* Sept. 2, 2020 minute entry order).

Defendant asserts that in light of the fact that he has been granted a recognizance bond in the Hall County Superior Court, "he may now be immediately eligible for a bond in this Court," although he acknowledges that he still has a state probation violation hold or "detainer." (Doc. 56 at 5). Defendant also "concede[s] that the body of case law holds that the Court cannot grant a bond at this time because he is present . . . on a *writ*," but he asks that the Court "simply inquire into the probable cause for his detention in the time honored tradition of conducting a detention hearing." (Doc. 62 at 2).

The Court notes that the Eleventh Circuit has not squarely addressed the issue of whether courts can hold detention hearings for defendants being held on a writ, as opposed to an arrest warrant or other authorization for detention. In a district court case in the Middle District of Florida, the court held that a defendant being held on a writ of habeas corpus ad prosequendum is entitled to a detention hearing. *United States v. Troedel*, No. 2:12-cr-81-FtM-29DNF, 2012 U.S. Dist. LEXIS 145219 (M.D. Fla. Oct. 9, 2012). In that case, the magistrate judge declined to hold a detention hearing until after the defendant resolved his state custody status. *Id.* at *2. The district court concluded that the defendant was "entitled to a hearing on the issue of release or detention, and if detention is sought, to a detention hearing under § 3142(f)." *Id*. at *4. The court reasoned that with respect to defendants present in federal court on a writ, "[n]othing in the statute

14

[i.e. 18 U.S.C. § 3142] disqualifies such a person from receiving a detention hearing," and the court cited other cases in which the courts had held detention hearings for defendants held on writs. *Id.* at *3-4. In *United States v. Dimmick*, a court in the Northern District of Iowa held a detention hearing for a defendant held on a writ. 82 F. Supp. 3d 866 (N.D. Iowa 2015). The court cited *Troedel* in support of its conclusion that the defendant was entitled to such a hearing and also noted that the court could find no authority "that Section 3142 should not apply to a federal criminal defendant who appears on a Writ. Neither Section 3142 nor any other statute creates an exception for defendants appearing by Writ." *Id*. at 869.

More recently, in a case cited by the Government, a court in the District of Colorado held that the Bail Reform Act does not apply to a defendant appearing in federal court on a writ, and therefore the defendant was not entitled to a detention hearing. *See United States v. Rodriguez-Palacios*, No. 19-cr-00010-CMA, 2019 U.S. Dist. LEXIS 174084, *4-10 (D. Colo. Oct. 7, 2019). The court further considered whether the writ independently mandated federal detention and found that the writ "mandates that Defendant remain in temporary federal custody until the conclusion of the criminal proceedings against him." *Id.* at *10-11. The undersigned finds the court's reasoning in *Rodriguez* persuasive and similarly finds that Defendant is not entitled to a detention hearing and that the writ mandates he remain in temporary federal custody at this time.

15

First, as to the application of the Bail Reform Act, that Act provides that "[a] judicial officer authorized to order the arrest of a person under section 3041 of this title [18 U.S.C. § 3041] before whom an arrested person is brought shall order that such person be released or detained, pending judicial proceedings, under this chapter [18 U.S.C. §§ 3141 *et seq*.]." 18 U.S.C. § 3141(a). "Thus, under the plain terms of the Act, it applies only to 'arrested person[s].' " *Rodriguez*, 2019 U.S. Dist. LEXIS 174084, at *5. The court in *Rodriguez* noted that in *United States v. Kelly*, the First Circuit found that an appearance under a writ of habeas corpus ad prosequendum was not an "arrest" for purposes of the Speedy Trial Act. 2019 U.S. Dist. LEXIS 174084, at *5 (citing *Kelly*, 661 F.3d at 687). In *Kelly*, the court explained, "Unlike an arrest, where an individual is taken into custody, the writ requires only a temporary physical transfer of an already detained individual." 661 F.3d at 687. The court also pointed out that "[i]ssuance of the writ ad prosequendum is not the beginning point of such restraints; by definition such writs only issue to those already in custody on other charges." *Id.* The court in *Rodriguez* found such reasoning to be persuasive and "applies with equal force under the Bail Reform Act given that the Bail Reform Act's authority is only over 'arrested person[s].' " 2019 U.S. Dist. LEXIS 174084, at *8. The court acknowledged that "some other courts have held that the Bail Reform Act does apply to persons appearing under writs of habeas corpus ad prosequendum,

16

including the *Troedel* and *Dimmick* decisions discussed above, but found that "none examined the impact of 18 U.S.C. § 3141(a)'s limitation of the judicial officer's 'release and detention authority' to 'arrested person[s].' " *Id.* at *8-9.

Here, as was the case in *Rodriguez*, an arrest warrant was issued but it was not executed. (*See* Doc. 38). Instead, Defendant was brought to this Court and continues to be held on a writ of habeas corpus ad prosequendum. (Doc. 18). Thus, under the persuasive authority of *Kelly* and *Rodriguez*, he was not an "arrested person" for purposes of the Bail Reform Act, and the Court will not hold a detention hearing at this time.[8] Moreover, as the court in *Rodriguez* found, the writ mandates federal detention as it commands that Defendant be detained "from day to day thereafter until discharged by the Court, then and there to be arraigned/tried on the indictmen[t] and receive and abide by the judgment of this Court in [this] case, thence to be returned to the custody from which he came,"

---

[8] The Government also argues that even if the Bail Reform Act applied, a detention hearing "would be a waste of this Court's resources" because Defendant "remains in Georgia custody given the state probation warrant against him," so even if the Court held a detention hearing and did not detain Defendant, Defendant would "remain in custody given his state probation warrant." (Doc. 61 at 4-5). But if the undersigned held a detention hearing and found that Defendant should be released on the federal charges, he would obtain the relief he seeks in his motion, i.e., transfer back to Hall County. (*See* Doc. 45). Thus, a detention hearing decision would not be moot due to his state probation violation hold as the Government contends. Nevertheless, the Court finds that Defendant is not entitled to a detention hearing at this time. The Government also argues that if the Court held a hearing Defendant "would not qualify for release" due to his criminal history. (Doc. 61 at 5). The Court does not reach that argument now and will consider the Government's assertion on that point if the Court later holds a detention hearing.

(Doc. 18), and Defendant's "detention by the State of [Georgia] remains the basis for his detention hearing throughout proceedings in this Court." 2019 U.S. Dist. LEXIS 174084, at *10-11. If the State of Georgia releases its probation violation "detainer" or hold, grants him a bond, or otherwise releases him from its custody, the Court will then hold a detention hearing. *See, e.g.*, *Newman v. Cozza-Rhodes*, No. 11-cv-03262-WYD, 2012 U.S. Dist. LEXIS 73684, at *10 (D. Colo. May 29, 2012) ("Clearly, Applicant was no longer in 'state custody' following his release on the PR bond."). Defendant's request to hold a detention hearing before he is released from state custody[9] is **DENIED**.

## Conclusion

Defendant's Motion To Return Mr. Waller To Local Jurisdiction (Doc. 45) is **DENIED**. Defendant's related requests to dissolve the writ and to grant him a detention hearing are **DENIED**. The Court will hold a detention hearing in this case if the state court lifts its probation violation hold or detainer or otherwise releases him from state custody. Defendant's Motion For Extension Of Time To Submit Supplemental Brief (Doc. 55) is **DENIED AS MOOT**.

---

[9] In a supplemental filing submitted on September 17, 2020, Defendant stated that he anticipated that a status conference regarding his state probation hold would take place on that date. In that filing counsel also indicated that Defendant has been diagnosed with COVID-19. In the event the probation hold is lifted Defendant may renew his request for a detention hearing.

**IT IS SO ORDERED** this 17th day of September, 2020.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge