```
 1                   IN THE UNITED STATES DISTRICT COURT
 2               FOR THE NORTHERN  DISTRICT OF GEORGIA
                           GAINESVILLE DIVISION
 3

 4
    UNITED STATES OF AMERICA    )
 5                              )    NO. 2:20-CR-23-SCJ-2
             V.                 )
 6                              )    GAINESVILLE, GEORGIA
    DELVECCHO WALLER, JR.       )    NOVEMBER 12, 2020
 7   _____)

 8

 9

10                                  -  -  -

11

12             TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS
                BEFORE THE HONORABLE J. CLAY FULLER
13                  UNITED STATES MAGISTRATE JUDGE

14                                  -  -  -

15

16
    APPEARANCES OF COUNSEL:
17

18        FOR THE UNITED STATES:     GREGORY E. RADICS

19        FOR THE DEFENDANT:         ARTURO CORSO

20

21

22
                         DAVID A. RITCHIE
23                    OFFICIAL COURT REPORTER
                      75 TED TURNER DRIVE, SW
24                    ATLANTA, GEORGIA 30303
                         (404) 215-1516
25
```

UNITED STATES DISTRICT COURT

1              (GAINESVILLE, HALL COUNTY, GEORGIA, NOVEMBER 12,

2        2020, VIA VIDEOCONFERENCE)

3              THE COURT:  ALL RIGHT.  WELL, GOOD MORNING.  WE ARE

4   HERE ON 2:20-CR-23, UNITED STATES V. WALLER.  I HAVE MR. WALLER

5   WITH US I CAN SEE.

6              MR. WALLER, CAN YOU HEAR AND SEE ME OKAY?  I'M JUDGE

7   FULLER.

8              THE DEFENDANT:  YES, SIR.

9              THE COURT:  OKAY.  AND ARE YOU OKAY WITH DOING THIS,

10  THIS PROCEEDING, BY VIDEO?

11             THE DEFENDANT:  YES, SIR.

12             THE COURT:  OKAY.  THANK YOU, SIR.

13             I HAVE REVIEWED THE GOVERNMENT'S MOTION, OBVIOUSLY

14  HAVE BEEN IN THE LOOP AS MR. CORSO HAS TAKEN THE STEP TO GET US

15  IN A POSTURE WHERE WE CAN TAKE UP THIS ISSUE TODAY, AND I HAVE

16  ALSO REVIEWED THE PRETRIAL SERVICES REPORT.

17             IT APPEARS WE ARE GETTING A LOT OF NOISE FROM WHERE

18  MR. WALLER IS, PERHAPS, AND I DON'T KNOW.  YES, MS. KLIMENKO

19  HAS MUTED YOU, MR. WALLER.  IF YOU NEED -- IF YOU HAVE

20  SOMETHING YOU WANT TO SAY, IF YOU WILL RAISE YOUR HAND SO WE

21  CAN KNOW THAT YOU NEED TO INTERJECT SOMETHING, THAT WOULD BE

22  HELPFUL.  OTHERWISE, I WOULD, GIVEN THE POSTURE OF THIS, I

23  WOULD LET MR. RADICS TALK A LITTLE BIT ABOUT WHY HE BELIEVES

24  THAT THE MOTION FOR DETENTION SHOULD BE GRANTED AND THEN I WILL

25  HEAR FROM MR. CORSO.


                    UNITED STATES DISTRICT COURT

1          MR. RADICS:  JUDGE, THE GOVERNMENT WOULD ASK THAT THE

2  DEFENDANT REMAIN IN DETENTION AND THE MOTION BE DENIED BASED

3  UPON SEVERAL THINGS.  NUMBER ONE IS THE DEFENDANT POSES A

4  DANGER TO THE SAFETY OF THE COMMUNITY AND WE POINT TO THE

5  NATURE AND CIRCUMSTANCES OF HIS MOST RECENT ARREST.

6          I KNOW THE COURT DOESN'T KNOW ALL THAT MUCH ABOUT IT,

7  BUT IT WAS -- HE IS CHARGED WITH AN OFFENSE WHICH HAS A

8  FIVE-YEAR MANDATORY MINIMUM FOR, AND THE ALLEGATIONS ARE THAT

9  HE AND FOUR OTHER PEOPLE PLANNED AND PLOTTED TO DESTROY A

10  POLICE CAR AT THE RESIDENCE OF A GAINESVILLE POLICE OFFICER AND

11  THAT'S WHAT WAS DONE THROUGH AN INCENDIARY DEVICE, A VIOLENT,

12  EXTREME ACT OF DOMESTIC TERRORISM WAS COMMITTED, AND THAT

13  POLICE CAR WAS SET ON FIRE.

14          AND THIS IS ON THE NIGHT OF THE GEORGE FLOYD PROTESTS

15  IN GAINESVILLE.  THE EVIDENCE WE HAVE SHOWS THAT IT WAS A

16  SPINOFF OF THAT, THAT IT WAS INVOLVED AND THEY HAD TALKED ABOUT

17  WHAT THEY WERE GOING TO DO BEFOREHAND.  SO THAT'S THE BIGGEST

18  CONCERN.

19          ADDITIONALLY, THIS ACTIVITY WAS ALLEGEDLY COMMITTED

20  WHILE HE WAS UNDER THE SUPERVISION OF PROBATION.  HE HAS A

21  PRIOR VIOLENT CONVICTION FOR BATTERY.  HE ALSO HAS SOME OTHER

22  CONVICTIONS AMONG THOSE.  AND HE IS A YOUNG MAN SO THIS IS NOT

23  SOMETHING THAT'S SPREAD OUT OVER A LONG PERIOD.  HE HAS AN

24  ENTERING AUTO FELONY CONVICTION WHICH HE WAS PLACED ON

25  PROBATION FOR FOR FOUR YEARS AND NINE MONTHS AND TWO DAYS.  HE

1  HAS THAT BATTERY CONVICTION, WHICH I MENTIONED, AND HE HAS SOME

2  OTHER ARRESTS AND MOTOR VEHICLE CONVICTIONS.

3       BUT CONSIDERING THAT HE DOES HAVE A PRIOR VIOLENT

4  HISTORY AND THIS IS AN ACT OF VIOLENCE AND ALLEGED DOMESTIC

5  TERRORISM, THE GOVERNMENT IS VERY CONCERNED ABOUT THE SAFETY OF

6  THE COMMUNITY.  AND ALSO THERE IS A RISK OF NONAPPEARANCE,

7  BECAUSE HE HAS NOT BEEN COMPLIANT WITH PROBATION IN THE PAST.

8  HE COMMITTED THIS, ALLEGEDLY COMMITTED THIS OFFENSE WHILE HE

9  WAS ON PROBATION AND HE IS NOW FACING A FIVE-YEAR MANDATORY

10  MINIMUM SENTENCE FOR THE CHARGE THAT HE HAS RECENTLY -- THAT'S

11  RECENTLY ALLEGED IN THE INDICTMENT.

12       THERE IS A PERSON WHO OWNED THAT -- DIDN'T OWN THE

13  VEHICLE BUT THE OFFICER WHO WAS ASSIGNED THE VEHICLE HAD THE

14  VEHICLE PARKED IN FRONT OF HIS APARTMENT WHEN IT WAS BURNED.

15  AND THAT INDIVIDUAL IS VERY CONCERNED FOR HIS OWN SAFETY BASED

16  UPON THE ACT THAT WAS TAKEN OUT AGAINST THE CAR PARKED RIGHT IN

17  FRONT OF HIS APARTMENT.  AND IT SEEMED LIKE IT WAS A TARGETED

18  ACT AND THE INFORMATION THAT WE HAVE IS THAT IT WAS TALKED

19  ABOUT BEFOREHAND AND THEY DID EXACTLY WHAT THEY INTENDED TO DO

20  IS TO INCITE TERROR IN THE COMMUNITY.  SO WE WOULD ASK THAT THE

21  COURT DENY BOND FOR THOSE REASONS.

22       THANK YOU.

23       THE COURT:  THANKS, MR. RADICS.

24       MR. RADICS:  YOU'RE WELCOME.

25       THE COURT:  I AM HAPPY TO HEAR FROM MR. CORSO NOW.


UNITED STATES DISTRICT COURT

1          MR. CORSO:  YOUR HONOR, I AM PUZZLED AND A LITTLE BIT

2    DISTURBED BY THE GROSS MISREPRESENTATION MADE BY THE GOVERNMENT

3    HERE ABOUT THE FACTS.  THE GOVERNMENT KNOWS THAT THIS INCIDENT

4    WAS NOT A SPINOFF OF SOME PRIOR MARCH.  THE GOVERNMENT KNOWS

5    THAT THAT WAS MERELY AN ACTIVITY WHERE MY CLIENT AND SOME OTHER

6    PEOPLE AND MANY HUNDREDS OF LAW-ABIDING PEOPLE HAD BEEN

7    PARTICIPATING IN A PEACEFUL, NONVIOLENT DEMONSTRATION, AS

8    GUARANTEED BY THE CONSTITUTION, TO PROTEST POLICE BRUTALITY, IN

9    THIS CASE AGAINST ONE INDIVIDUAL BUT ALSO ADDRESSING THE LARGER

10   NATIONWIDE AND MANY DECADES-LONG ISSUE OF POLICE VIOLENCE

11   AGAINST PEOPLE OF COLOR.

12          MY CLIENT HAD NOTHING TO DO WITH ORGANIZING THE

13   MARCH.  HE MERELY ATTENDED IT.  AND TO JUXTAPOSE THOSE THINGS

14   TOGETHER AND THROW AROUND CASUALLY WORDS LIKE "TERRORISM" IS

15   JUST -- IS JUST SO FALSE THAT I AM -- THAT I AM STUNNED.

16          I ALSO HIGHLY DOUBT THE GOVERNMENT'S REPRESENTATION

17   THAT THE POLICE OFFICER TO WHOM THE VEHICLE WAS ASSIGNED FEARS

18   FOR HIS SAFETY.  IT JUST DOESN'T MAKE ANY SENSE AT ALL.  THERE

19   IS NO -- THERE IS NOTHING IN ANY OF THE DISCOVERY THAT I HAVE

20   RECEIVED THAT INDICATES ANYTHING OF THAT NATURE OR INDICATES

21   THAT THE INDIVIDUAL WHO WAS ASSIGNED THE VEHICLE WAS KNOWN TO

22   THE DEFENDANTS OR IN ANY WAY ASSOCIATED WITH THE VEHICLE.  THE

23   VEHICLE DIDN'T BEAR HIS NAME.  IT'S NOT LIKE A FIGHTER PILOT

24   WHERE YOU PUT YOUR CALL SIGN ON THE DOOR.  THIS WAS JUST A

25   PARKED, UNOCCUPIED VEHICLE AT REST MARKED AS A GAINESVILLE

1   POLICE VEHICLE.

2         ALSO, THE GOVERNMENT KNOWS THAT MY CLIENT IS NOT EVEN

3   ALLEGED TO HAVE BEEN THE PERSON TO FIRE THE FLARE GUN, NOT A

4   REGULAR GUN BUT A FLARE GUN.  THE PERSON ALLEGED BY THE

5   GOVERNMENT TO HAVE FIRED THE FLARE GUN WAS ANOTHER PERSON AND

6   THE GOVERNMENT'S BEST EVIDENCE IS THAT MY CLIENT WAS MERELY

7   PRESENT IN THE VEHICLE THAT ARRIVED AT THE APARTMENT COMPLEX.

8   HE NEVER APPROACHED OR HAD ANY CONTACT WITH THE POLICE VEHICLE.

9         I AM ALSO DISTURBED TO HEAR THE WORD "TERRORISM"

10  THROWN AROUND SO CASUALLY IN THE PRETRIAL RELEASE REPORT.  WHEN

11  I LOOKED AT SOME OF THE VIDEOS, I ACTUALLY LAUGHED OUT LOUD

12  WHEN ONE OF THE FIRST QUESTIONS POSED BY THE INTERVIEWING

13  OFFICER WAS WHETHER MY CLIENT HAD EVER HEARD OF THE GROUP

14  ANTIFA.  IT JUST SHOWS HOW TUNNEL VISION THIS INVESTIGATION

15  BEGAN.

16        THERE IS NO SUCH THING AS ANTIFA AS AN ORGANIZED

17  GROUP.  IT IS MERELY A CONCEPT OF LOOSELY ORGANIZED YOUNG

18  PEOPLE WHO PROTEST AGAINST FASCISM, BUT THEY ARE NOT A

19  TERRORIST GROUP AND THE HEAD OF THE FBI HAS SAID SO PUBLICLY

20  AND UNDER OATH IN A CONGRESSIONAL HEARING.  BUT, OF COURSE, THE

21  VIDEO I AM REFERRING TO WAS MADE IN MAY AND THE FBI'S STATEMENT

22  WAS MADE IN I THINK AUGUST.

23        SO THERE HAS BEEN AN EVOLUTION IN THE WAY PEOPLE LOOK

24  AT THE CASE AND OTHER CASES LIKE THIS AROUND THE COUNTRY.  BUT

25  TODAY IS -- I DON'T KNOW WHAT DAY.  TODAY IS NOVEMBER 12TH OR

UNITED STATES DISTRICT COURT

1   SOMETHING LIKE THAT.  TODAY IS NOVEMBER 12TH AND WE KNOW

2   BETTER.  AND FOR THE GOVERNMENT TO STICK STEADFASTLY TO THIS

3   IDEA THAT MY CLIENT WAS PART OF SOME ORGANIZED CONSPIRACY OR

4   GANG PLAN OR TARGETED TERRORISM IS JUST SO PATENTLY FALSE.  AND

5   I AM GOING TO ASK THE COURT TO REMEMBER THIS WHEN THIS CASE

6   GOES TO TRIAL AND THEY SEE WHAT THE GOVERNMENT'S EVIDENCE AS

7   PRESENTED TRULY IS.

8           NOW LOOKING AT THE PS -- AT THE PRETRIAL REPORT, THE

9   PRIOR VIOLENCE THAT MR. -- THAT THE GOVERNMENT REFERRED TO IS A

10  MISDEMEANOR.  AND IF YOU LOOK AT IT AS I HAVE LOOKED AT SO MANY

11  CASES LIKE THIS OVER THE YEARS, YOU SEE THAT THE GENTLEMAN, MY

12  CLIENT, WAS ORIGINALLY CHARGED WITH A FELONY FALSE IMPRISONMENT

13  AND THAT WAS DISMISSED, PROBABLY BECAUSE THEY SAID, WELL, IF

14  YOU'LL JUST ACCEPT THE MISDEMEANOR BATTERY, WE'LL DISMISS THE

15  FELONY.  AND LIKE ALL RATHER UNSOPHISTICATED, POORLY

16  REPRESENTED PEOPLE WHO COME THROUGH THE COURT SYSTEM, HE TOOK

17  THAT DEAL.  WHO WOULDN'T?  THEY DON'T KNOW ANY BETTER.  YOU

18  ALMOST HAVE TO BE A LAWYER TO KNOWINGLY WAIVE YOUR RIGHTS AND

19  NEGOTIATE THESE DEALS AND CLOSE THESE CASES.

20          THE GOVERNMENT ALSO SAID THAT MY CLIENT HAS A PRIOR

21  HISTORY OF VIOLATING HIS PROBATION.  I DON'T SEE THAT WELL LAID

22  OUT IN THE REPORT.  ON JULY 5TH OF 2019, WHEN MY CLIENT WAS 20

23  YEARS OLD, APPARENTLY THERE IS A LINE ITEM HERE THAT SAYS

24  PROBATION VIOLATION, BUT IT HAS DISPOSITION UNKNOWN.  SHORTLY

25  THEREAFTER, THERE IS A CONTEMPT OF COURT, DISPOSITION UNKNOWN.

1          I THINK, I DON'T KNOW BUT I THINK THAT MIGHT BE A

2    CHILD SUPPORT ISSUE.  BUT OTHER THAN THE PENDING CASE THAT WE

3    ARE HERE ABOUT, HE DOESN'T APPEAR TO HAVE ANY OTHER VIOLATIONS

4    OF PROBATION AND HE CERTAINLY DOESN'T HAVE ANY SERIOUS FELONIES

5    OR SERIOUS VIOLENT CONDUCT.

6          THE COURT:  WHY WOULDN'T THE -- WHY WOULDN'T THE

7    FAMILY VIOLENCE IN JANUARY OF 2019 ARGUABLY BE.  I GUESS HE

8    HADN'T BEEN YET, HE HADN'T BEEN CONVICTED ON THE CHARGE FROM

9    DECEMBER.  I SEE.  I SEE WHERE YOU ARE GOING.

10          MR. CORSO:  YES, SIR.

11          THE COURT:  WHILE THE CHARGE RELATED TO ENTERING THE

12    AUTOMOBILE WAS PENDING, HE HAD THE FAMILY VIOLENCE INCIDENT.

13          MR. CORSO:  EXACTLY; EXACTLY RIGHT.  SO YOU WILL SEE

14    IN THE FAR RIGHT COLUMN, THE CONVICTION DATE IS ACTUALLY JULY

15    OF 2019.

16          SO, ANYWAY, JUST GOING BACK TO THE BALANCE OF THE

17    REPORT, WHAT I SEE IS A PARAGRAPH ON -- IT LOOKS LIKE ON PAGE

18    FOUR WHERE THE REPORTER, MR. PATRICK, SAYS HE TALKED TO THE

19    HALL COUNTY STATE COURT PROBATION OFFICER, A MR. LONG, WHO SAID

20    THAT THE DEFENDANT, MR. WALLER, HAS REPORTED AS DIRECTED, HAS

21    BEEN GIVEN ONE DRUG TEST.  HE PASSED IT.  THERE IS THAT MENTION

22    TO CHILD SUPPORT.  AND IT ALSO NOTES THAT HE WAS GIVEN A BOND

23    ON HIS PROBATION VIOLATION, WHICH IS WHAT FINALLY EMPOWERED US

24    TO BE HERE TODAY.

25          BUT THE BALANCE OF IT IS THAT THIS IS A YOUNG MAN

1   WITH A JOB WITH FIVE CHILDREN TO SUPPORT, WITH A MOTHER AND A

2   FIANCEE.  HE CAN GO HOME.  HE IS NOT WHAT I REALLY -- I REALLY

3   DISLIKE THIS ASSESSMENT OF DANGER, NUMBER SEVEN, THAT HE IS A

4   VIOLENT EXTREMIST.  THAT IS JUST SO -- SUCH AN EXAGGERATION AS

5   TO BE FALSE.  AND I AM, I AM BOTHERED THAT IT WOULD BE INCLUDED

6   IN AN OFFICIAL REPORT.

7          BUT THIS IS A GUY THAT'S BEEN IN JAIL CONTINUOUSLY

8   SINCE MAY MERELY FOR BEING IN A CAR WITH A GROUP OF KIDS THAT

9   WANTED TO -- I DON'T KNOW EXACTLY, YOU KNOW, JUST MAYBE SOME

10  KIND OF MISCHIEF, SOME KIND OF PROTEST, SOME KIND OF

11  DELINQUENCY, BUT IT IS CERTAINLY NOT ORGANIZED.  IT WAS

12  CERTAINLY NOT A CONSPIRACY OR PLAN OR EXTREMIST VIOLENT

13  ACTIVITY OR ANTIFA.  IT'S JUST A BUNCH OF 20-YEAR-OLD

14  NINCOMPOOPS, ONE OF WHICH DID SOMETHING VERY STUPID AND THE

15  REST OF WHICH SAID LET'S GET THE -- WHAT DID ONE SHEEP HERDER

16  SAY TO THE OTHER SHEEP HERDER? -- LET'S GET THE FLOCK OUT OF

17  HERE.

18          WELL, THAT'S THE KIND OF CASE THAT WE ARE REALLY

19  DEALING WITH.  AND WHEN YOU LOOK AT THE CASE IN THAT CONTEXT,

20  THIS IS A CASE THAT IS IDEAL FOR THE GRANTING OF BOND.  AND I

21  DO ASK THAT MR. WALLER BE GRANTED A RECOGNIZANCE BOND AND THAT

22  WE TAKE INTO ACCOUNT THAT FOR THESE LAST, LET SEE, MAY, JUNE,

23  JULY, AUGUST, SEPTEMBER, OCTOBER, NOVEMBER, WE ARE IN THE

24  SEVENTH MONTH OF HIS DETENTION WITHOUT BOND WHILE THE

25  GOVERNMENT HERE ACTED IN COLLABORATION WITH THE GOVERNMENT

1  ACROSS THE STREET TO CREATE A CATCH-22 AND KEEP THIS YOUNG MAN

2  IN JAIL.

3           THEY ACTUALLY WERE PARTICIPANTS IN HIS GETTING COVID.

4  THIS YOUNG MAN OF 21 YEARS ALMOST DIED IN JAIL BECAUSE HE

5  CAUGHT COVID IN JAIL.  HE WAS VOMITING BLOOD IN JAIL.  AND WHEN

6  HE HAD THE TEMERITY TO ASK FOR MEDICAL ATTENTION, THE NURSE

7  TOLD HIM THAT IT WAS HIS OWN FAULT FOR HAVING DIABETES AND SHE

8  GAVE HIM SOME PEPTO-BISMOL.

9           I AM NOT EXAGGERATING.  THOSE ARE FACTS.  ONLY AFTER

10  A FEW DAYS DID THEY FINALLY RECOGNIZE THAT HE WAS PROBABLY

11  POSITIVE WITH COVID.  THEY QUARANTINED HIM SEPARATELY.  BUT

12  THEY PUT HIM IN ANOTHER CELL WITH OTHER PEOPLE THAT THEY KNEW

13  FOR A FACT HAD COVID.  SO THEY JUST -- THE LACK OF HUMANITY IN

14  INCARCERATING THIS YOUNG MAN FOR THIS CRIME IS SHOCKING.  I

15  CAN'T OVERSTATE IT ENOUGH AND I DO EARNESTLY AND MERCIFULLY

16  REQUEST THAT YOUR HONOR SET A BOND.

17           THANK YOU.

18           THE COURT:  THANKS.

19           MR. RADICS, IF YOU WANT TO RESPOND ON SOME OF WHAT

20  MR. CORSO HAS SAID, ESPECIALLY CONCERNING THE STRENGTH OF THE

21  CASE?  I AM INCLINED TO ACCEPT WHAT HE IS SUGGESTING ABOUT THE

22  LINE ITEM SEVEN ON THE REPORT ABOUT THE VIOLENT EXTREMIST

23  DOMESTIC.  I MEAN I SEE THERE IS NO DOUBT THAT THIS ACT IN

24  ITSELF WAS VIOLENT, BUT I AM NOT READY TO JUST CAST HIM INTO

25  SOME KIND OF -- AS IF HE IS IN AN ORGANIZED GROUP THAT HAS THIS

1  PURPOSE.

2          THE CONCERN I'VE GOT HANGING OUT THERE STILL IS SOME

3  OF THIS CRIMINAL HISTORY, BECAUSE EVEN AS A YOUNG MAN, THE

4  PROPENSITY TO FIND TROUBLE AND GET INTO DIFFERENT KINDS OF

5  UNFORTUNATE SITUATIONS IS FAIRLY STEADY AND UNRELENTING, AT

6  LEAST UP UNTIL THIS POINT.

7          SO, MR. RADICS, I WOULD LIKE TO HEAR FROM YOU A

8  LITTLE ON MR. CORSO'S ARGUMENTS CONCERNING STRENGTH OF THE CASE

9  AND THEN YOU CAN TALK ABOUT ANYTHING ELSE YOU WANT TO.

10          AND I THINK YOU ARE MUTED.

11          MR. RADICS:  YES, YOUR HONOR.  TO ADDRESS WHAT YOU

12  JUST BROUGHT UP, I'M NOT SURE WHERE THE DEFENSE, COUNSEL FOR

13  THE DEFENDANT GOT THE INFORMATION, CAME UP WITH THIS

14  INFORMATION ABOUT PEOPLE ALLEGING THAT HIS CLIENT IS PART OF A

15  GROUP SUCH AS ANTIFA.  I DON'T KNOW WHERE THAT CAME FROM.

16          I MEAN MY PRESENTATION WAS CLEAR AND UNEQUIVOCAL OF

17  WHAT, WHAT THIS CASE HAS TO DO WITH.  NO ONE MENTIONED ANYTHING

18  ABOUT ANTIFA.  NO ONE MENTIONED ANYTHING ABOUT PROTESTS

19  RELATING TO GEORGE FLOYD IN GAINESVILLE BEING VIOLENT,

20  TERRORISTIC MEANS.  NOTHING WAS MENTIONED ABOUT THOSE.  IT'S

21  JUST MADE UP WHOLE CLOTHE IN AN ATTEMPT TO INFLUENCE YOU.  AND

22  THAT'S NOT THE WAY THAT THE GOVERNMENT IS GOING TO BE

23  PRESENTING THINGS.  THAT'S NOT THE WAY WE ARE GOING TO BE

24  PROCEEDING ON THIS CASE.

25          WE ARE GOING TO BE PRESENTING FACTS AND WE ARE GOING

1   TO BE ADDRESSING THINGS THAT MATTER.  WE ARE NOT GOING TO MAKE

2   THINGS UP AND THROW ALLEGATIONS AROUND.

3           SO WHEN I SAID THAT THIS ACT WAS AN ACT OF VIOLENCE,

4   THAT'S WHAT IT WAS.  A POLICE CAR WAS TARGETED BY THESE FIVE

5   INDIVIDUALS WHO HAD LEFT THE GEORGE FLOYD PROTEST IN

6   GAINESVILLE.  WHATEVER WAS HAPPENING IN THAT PROTEST, NO ONE IS

7   CHARGED WITH ANYTHING DOWN THERE IN THIS FEDERAL OFFENSE.

8           THEY LEFT THAT PEACEFUL, THAT PEACEFUL PROTEST.  AS

9   FAR AS I KNOW IT WAS PEACEFUL.  BUT WE ARE NOT, WE ARE NOT

10  CHARGING HIM WITH ANYTHING GOING ON DOWN IN GAINESVILLE.  WE

11  ARE CHARGING SOMETHING THAT HAPPENED AT AN APARTMENT COMPLEX

12  AFTER THOSE FIVE INDIVIDUALS LEFT THE GATHERING INVOLVING

13  GEORGE FLOYD AND PROTESTORS IN GAINESVILLE.

14          THEY WENT TO A LOCATION WHERE THEY KNEW A POLICE CAR

15  WAS PARKED IN AN EFFORT TO -- AND THE EVIDENCE WE HAVE IS TO

16  GET BACK AT THE POLICE AND SHOW THEM SOMETHING AND INCITE

17  SOMETHING.  AND THEY WENT THERE WITH A FLARE GUN, WHICH IS MUCH

18  MORE, CAN CAUSE MUCH MORE DAMAGE TO A VEHICLE THAN A REGULAR

19  FIREARM, BECAUSE IT'S AN INCENDIARY DEVICE.

20          AND THAT FLARE GUN WAS IN THE CAR ON THEIR WAY THERE.

21  THAT FLARE GUN WAS KNOWN ABOUT BY EVERYBODY.  AND THE

22  INFORMATION WE HAVE IS THAT THIS INDIVIDUAL DEFENDANT WAS THE

23  ONE THAT WAS MOST ACTIVE IN EGGING ON AND BULLYING THE YOUNGEST

24  MEMBER OF THE GROUP TO FIRE THAT FLARE GUN.  AND THESE ARE NOT

25  CHILDREN.  THESE ARE NOT KIDS.  THIS DEFENDANT IS A 22-YEAR-OLD

1  INDIVIDUAL.  AND TO CALL THEM KIDS IS A MISSTATEMENT, KIDS

2  MESSING AROUND.

3         THEY WENT THERE TO COMMIT AN ACT, A VIOLENT ACT, AND

4  THE SPECIAL AGENT INVOLVED IN THE CASE HAS TOLD ME THAT THE

5  OFFICER WHO WAS RESPONSIBLE FOR THAT CAR, WHO DROVE THAT CAR,

6  WHO HAD IT PARKED IN FRONT OF HIS HOUSE IS VERY FRIGHTENED FOR

7  HIS SAFETY.

8         HIS POLICE CAR WAS BLOWN -- ESSENTIALLY BLOWN UP IN

9  FRONT OF HIS APARTMENT THAT NIGHT.  AND SO HE IS, HE IS SCARED.

10  AND TO THROW AROUND ALLEGATIONS THAT THERE IS SOME SORT OF

11  COLLABORATION AND THAT THE GOVERNMENT IS MAKING UP THINGS, IT'S

12  IMPROPER.

13         AND THE DEFENDANT WAS IN CUSTODY NOT BECAUSE OF

14  ANYTHING THAT THE GOVERNMENT DID OR THE STATE GOVERNMENT DID.

15  HE WAS IN CUSTODY THROUGH HIS OWN ACTS OF VIOLATING PROBATION.

16  HE WAS BEING HELD ON A WRIT.  THAT'S SOMETHING THAT -- LEGALLY

17  THAT HAPPENED.  THERE IS NO, YOU KNOW, SECRET CONSPIRACY BY

18  ANYBODY TO KEEP HIM IN CUSTODY.  YOU CAN ONLY ADDRESS BOND WHEN

19  IT COMES UP IN AN APPROPRIATE MATTER LEGALLY.  THAT'S WHAT WE

20  ARE DOING HERE.

21         SO I DON'T WANT TO GO TOO FAR DOWN.  I EXPECT MORE OF

22  THE SAME, OF FALSE ACCUSATIONS AND THINGS LIKE THIS, BECAUSE I

23  HAVE DEALT WITH COUNSEL IN THE PAST, BUT THIS IS PAR FOR THE

24  COURSE.  BUT WE ARE NOT GOING TO, WE ARE NOT GOING TO DO IT.

25  WE ARE NOT GOING TO RESPOND TO THOSE THINGS.  WE ARE NOT GOING

1  TO ENGAGE IN THESE TYPE OF THINGS.  WE ARE GOING TO KEEP IT

2  PROFESSIONAL AND PROCEED WITH THIS CASE AS WE WOULD ANY CASE

3  AND PRESENT THE FACTS TO YOU.  WE ARE NOT GOING TO HIDE ANY

4  BALLS AND WE ARE NOT GOING TO DO ANYTHING OF THAT NATURE.

5            AND MY PRESENTATION WAS -- WHEN I SAY THIS WAS A

6  VIOLENT ACT, IT WAS A VIOLENT ACT.  HE IS CHARGED WITH

7  COMMITTING A VIOLENT ACT.  HE IS CHARGED WITH DOING SOMETHING

8  TO INCITE TERROR.  HE IS CHARGED WITH BURNING OF A POLICE CAR

9  VEHICLE IN FRONT OF A PERSON'S HOUSE.  WHAT OTHER PURPOSE WOULD

10  THERE BE FOR THAT?  I DON'T KNOW.  SO -- BUT WHAT IT'S NAMED,

11  WHAT IT'S CALLED, IT DOESN'T MATTER FOR THE PURPOSE OF THE BOND

12  HEARING.

13            WHAT DOES MATTER IS WHAT WAS DONE.  AND FIVE

14  INDIVIDUALS WENT TO A LOCATION WITH A FLARE GUN AND SET A

15  POLICE CAR ON FIRE.  THEY DID IT WITH THE PURPOSE OF BRINGING

16  ATTENTION TO WHAT THEY WERE UPSET ABOUT.  WHAT THAT WAS, I

17  GUESS WE'LL FIND OUT.  BUT THAT'S WHAT HAPPENED AND THAT'S VERY

18  DANGEROUS AND THAT'S VERY CONCERNING AND IT'S NOT A CHILD.

19  IT'S SOMEONE WHO KNOWS BETTER.  AND THE EVIDENCE WE HAVE WAS

20  THAT THIS PERSON WAS THE ONE THAT WAS URGING THE PERSON WHO

21  DID -- WHO WE BELIEVE PULLED THE TRIGGER, WHO WAS THE YOUNGEST

22  PERSON AND WHO THEY HAD A PRIOR RELATIONSHIP, THIS DEFENDANT

23  AND THE YOUNGEST PERSON.  THEY HAD KNOWN EACH OTHER FOR MANY

24  YEARS.  AND THAT HE URGED AND USING, USING NAMES AND TELLING

25  HIM SOME OTHER THINGS TO DO THIS ACT.


UNITED STATES DISTRICT COURT

```
 1          SO IT WAS -- AND HE IS NOT -- AND TO SAY THAT HE IS
 2  CHARGED WITH DOING SOMETHING SPECIFICALLY, HE IS CHARGED IN A
 3  CONSPIRACY.  THAT'S HOW, THAT'S HOW CONSPIRACIES WORK, WHEN
 4  PEOPLE ARE TOGETHER BEFORE, DURING AND AFTER AND THEY
 5  PARTICIPATE IN SOMETHING, THEY PLAN IT, THEY COMMIT AN OVERT
 6  ACT.  NOW, OF COURSE, THE GOVERNMENT WILL HAVE TO PROVE THAT,
 7  BUT THAT'S AS IT IS IN ANY CASE.
 8          SO HE IS CHARGED IN A CONSPIRACY TO COMMIT THESE
 9  OFFENSES.  ONE OF THE OFFENSES CARRIES A FIVE-YEAR MANDATORY
10  MINIMUM.
11          AND IF I -- JUDGE, IF YOU HAVE ANY, IF I CAN ADDRESS
12  ANY OTHER CONCERNS YOU HAVE THAT I LEFT OUT, PLEASE LET ME
13  KNOW.
14          THE COURT:  I THINK, I THINK THAT'S SUFFICIENT.
15          MR. CORSO, IS THERE ANYTHING ABOUT MR. RADICS'
16  RESPONSE THAT YOU FEEL COMPELLED TO RESPOND TO?
17          MR. CORSO:  I WOULD ASK THAT --
18          THE COURT:  LET'S JUST -- LET'S TRY TO STAY AWAY FROM
19  THE LABELING HIM AS A VIOLENT EXTREMIST.  I AM BASICALLY TAKING
20  A BLUE PENCIL AND SCRATCHING THAT OUT OF THE REPORT, OKAY?  AND
21  AT THE SAME TIME, UNLESS YOU'VE GOT SOMETHING HIGHLY SPECIFIC
22  TO TALK ABOUT IN THE CIRCUMSTANCES THAT HAVE KEPT HIM DETAINED
23  TO THIS POINT, AND I KNOW YOU HAVE BEEN WORKING FEVERISHLY TO
24  GET AROUND SOME OF THOSE BUREAUCRATIC ISSUES, BUT UNLESS YOU
25  HAVE GOT SOMETHING HIGHLY SPECIFIC, I AM AWARE OF THAT
```

1  DIFFICULTY BETWEEN THE TWO JURISDICTIONS AND UNDERSTAND YOUR

2  POSITION ON THAT.

3         BUT, YOU KNOW, I AM LETTING YOU KNOW I UNDERSTAND

4  WHERE YOU ARE COMING FROM THERE, BUT IF YOU'VE GOT ANYTHING

5  ELSE YOU WANT TO RESPOND TO, PLEASE LET ME HEAR FROM YOU.

6         MR. CORSO:  JUST TWO QUICK THINGS.  FIRST, I WOULD

7  ASK THE COURT TO DISREGARD THE PERSONAL REMARKS MADE BY

8  MR. RADICS AGAINST ME - IT HAS NO PLACE IN THE PRESENTATION

9  TODAY - BUT, MORE IMPORTANTLY, TO FOCUS ON WHAT YOUR HONOR SAID

10 WAS THE CONCERN OF KIND OF CLOSE TOGETHER CRIMINAL CONDUCT.

11         NOW, IT'S NOT, IT'S NOT IDEAL FROM MY POINT OF VIEW,

12 IT'S NOT IDEAL THAT THERE IS THIS MISDEMEANOR CONVICTION AND

13 THERE IS THIS FELONY ENTERING AN AUTO OUT THERE.  I CAN ONLY

14 TELL YOU THAT I HAVE SPOKEN WITH MR. WALLER ABOUT THAT AND I AM

15 SATISFIED THAT AFTER LISTENING TO THE FACTS OF BOTH OF THOSE

16 CASES THIS IS LIKE THOUSANDS OF CASES THAT WE SEE ALL THE TIME

17 WHERE PEOPLE ARE ACCUSED OF A CRIME AND INCARCERATED AND THEN

18 PUT IN A SITUATION WHERE THE PLEA BARGAINING IS ABOUT THE PATH

19 OF LEAST RESISTANCE.

20         FOR EXAMPLE, IN THE ENTERING AN AUTO CASE, I KNOW

21 THAT THAT HAS TO DO WITH A GUY THAT TOOK A CAR FROM A BUY HERE,

22 PAY HERE LOT FOR A TEST DRIVE AND THEN HAD A PLAN TO UPGRADE

23 THE STEREO IN THE DASH AND TOOK THE OLD STEREO OUT AND SOLD IT

24 TO MR. WALLER.

25         WELL, SUBSEQUENTLY WE FIND OUT THAT THE GUY DID NOT

1   PAY FOR THE CAR.  HE WENT AND TOOK THE CAR BACK AND DIDN'T COME

2   TO TERMS ON THE PURCHASE.  BUT MR. WALLER GETS CHARGED WITH

3   ENTERING AN AUTO TO STEAL.  WELL, THAT'S REALLY NOT A GOOD

4   DESCRIPTION OF WHAT HAPPENED.  BUT WHAT DID HE DO?  HE PLED

5   GUILTY AS PEOPLE DO.  AND SO IT LOOKS WORSE ON PAPER THAN IT

6   REALLY IS WHEN YOU GET TO THE UNDERLYING FACTS.  SIMILAR WITH

7   THE MISDEMEANOR SIMPLE BATTERY.

8           I CAN ONLY SAY THIS IN SUMMATION:  MR. WALLER HAS HAD

9   SEVEN MONTHS TO THINK ABOUT WHERE HE WOULD LIKE TO LIVE,

10  WHETHER IT'S AT HOME WITH HIS MOTHER AND HIS FIANCEE AND HIS

11  FIVE CHILDREN OR WHETHER IT'S IN THE DETENTION CENTER AT

12  LOVEJOY.  AND MAYBE THE LAW SEES HIM AS AN ADULT, BUT IN MY

13  EXPERIENCE, AND I THINK THE SCIENTIFIC COMMUNITY GENERALLY

14  AGREES WITH THE FACT THAT WE HUMANS, PARTICULARLY MEN, DO NOT

15  FULLY DEVELOP OUR BRAINS AND OUR IMPULSE CONTROL AND OUR

16  DECISION-MAKING POWERS UNTIL THE AGE OF 25.

17          I HAVE TEASED MY FOUR CHILDREN FOR YEARS THAT I

18  CONSIDER THEM ALL TO BE BRAIN DAMAGED AND INCAPABLE OF MAKING

19  GOOD DECISIONS WITHOUT SOME GUIDANCE UNTIL THEY ARE 25.  THAT'S

20  WHAT HAPPENED WITH MR. WALLER.  AND AS HE GETS A LITTLE BIT

21  OLDER EVERY DAY AND AS HE LIVES THROUGH THESE EXPERIENCES, AS

22  HE FACES DEATH FROM COVID IN A REMOTE JAIL ISOLATED FROM HIS

23  ATTORNEY AND HIS FAMILY, YOU DO A LOT OF GROWING UP.  AND I

24  WOULD -- I WOULD HAZARD TO SAY THAT MR. WALLER WILL NOT POSE A

25  SINGLE IOTA OF PROBLEM FOR YOU WHILE HE IS ON BOND AND THAT WE

1   SHOULD GIVE HIM A CHANCE.

2          THANK YOU.

3          THE COURT:  THANK YOU.

4          MR. RADICS:  JUDGE, IF I COULD JUST CORRECT ONE

5   THING, I BELIEVE THE PRESENCE REPORT SAYS THAT THE DEFENDANT

6   WAS COMMITTED -- CONVICTED OF BATTERY FAMILY VIOLENCE, NOT

7   SIMPLE BATTERY, WHICH IS A DIFFERENT STANDARD.  SO IT'S

8   ACTUALLY SUBSTANTIAL, CAUSING PHYSICAL HARM OR CREATING A

9   SUBSTANTIAL RISK OF THE PERSON RECEIVING -- I CAN'T RECALL.

10  IT'S BEEN TOO LONG.  BUT IT'S MUCH MORE SERIOUS THAN SIMPLE

11  BATTERY AND IT WAS JUST CALLED --

12          MR. CORSO:  IT'S A MISDEMEANOR.

13          MR. RADICS:  JUDGE, IT'S A -- IT WAS BATTERY FAMILY

14  VIOLENCE, NOT SIMPLE BATTERY.  THAT'S MY ONLY CORRECTION ON

15  THAT.

16          MR. CORSO:  IT'S A MISDEMEANOR.

17          THE COURT:  THANK YOU.

18          MR. CORSO:  THANK YOU.

19          THE COURT:  MR. LIFSEY, YOU HAVE HAD THE OPPORTUNITY

20  TO LOOK OVER THE CRIMINAL HISTORY AND THINK ABOUT THE

21  ENVIRONMENT THAT MR. WALLER MIGHT BE RELEASED INTO AND I'VE

22  READ YOUR REPORT.

23          HAS ANYTHING THAT WE HAVE DONE TODAY CHANGED YOUR

24  RECOMMENDATION?

25          AND YOU ARE MUTED.

1          THE PROBATION OFFICER:  NO, YOUR HONOR.

2          THE COURT:  OKAY.  I AM GOING TO FIND THAT THE

3    GOVERNMENT DID NOT MEET ITS BURDEN ON RISK OF FLIGHT.  THE ONLY

4    THING ARGUED THERE WAS THE NONCOMPLIANCE AND THE SUBSTANTIAL

5    MANDATORY MINIMUM.

6          ON THE OTHER HAND, I AM GOING TO FIND THAT THERE ARE

7    NO CONDITIONS OR COMBINATION OF CONDITIONS THAT CAN REASONABLY

8    ASSURE THE SAFETY OF THE COMMUNITY.  THE CRIMINAL HISTORY AND

9    CONDUCT, EVEN THOUGH WHEN VIEWED ONE AT A TIME AND IN ISOLATION

10   MAY NOT LOOK THAT BAD, WHEN VIEWED AS KIND OF A PATHWAY TO THIS

11   EVENT IS VERY TROUBLING.  AND IT REFLECTS EITHER A REFUSAL OR

12   AN INABILITY TO FOLLOW THE RULES WHEN -- EVEN WHEN ON

13   SUPERVISION OR ON PROBATION.

14         AND MY CONCERN HERE IS NOT JUST FOR THE COMMUNITY,

15   MEANING THE GENERAL COMMUNITY, THE POLICE OFFICERS, WHATEVER.

16   BUT GIVEN THAT HE'S GOT THIS HISTORY OF THE FAMILY VIOLENCE

17   CHARGE AND THE PRESSURE OF BEING UNDER THIS, HAVING THESE

18   CHARGES AGAINST HIM, I FEEL LIKE PUTTING HIM IN AN ENVIRONMENT

19   LIKE THAT CREATES A SUBSTANTIAL RISK TO THOSE AROUND HIM.

20         I AM PERSONALLY IMPACTED BY THE ARGUMENT ON THE

21   CONDITIONS HE'S HAD TO GO THROUGH, THE FACT HE HAS BEEN SICK

22   AND ALL OF THAT.  I UNDERSTAND THAT THAT IS A HEAVY BURDEN.  I

23   ALSO AM AWARE OF THE CIRCUMSTANCES OF THIS CASE BEING SOMETHING

24   THAT IS OF GREAT IMPORTANCE TO EVERYBODY IN DIFFERENT WAYS AND

25   I UNDERSTAND IT'S A VERY DIFFICULT SITUATION OVERALL.


                    UNITED STATES DISTRICT COURT

1            BUT HAVING SAID ALL OF THAT, THERE IS JUST A LITTLE

2    TOO MUCH IN THE CRIMINAL HISTORY FOR ME TO FEEL COMFORTABLE

3    RELEASING HIM UNDER ANY SET OF CONDITIONS AND FOR THAT REASON I

4    WILL GRANT THE GOVERNMENT'S DETENTION MOTION.

5            COUNSEL, I APPRECIATE YOU ALL'S EFFORTS TODAY, BOTH

6    OF YOU ALL.  I KNOW THIS IS NOT AN EASY CASE TO ARGUE.  I KNOW

7    THAT BOTH OF YOU ALL HAVE A LOT OF HEART IN IT AND I AM

8    APPRECIATIVE OF THAT.  I LOOK FORWARD TO DEALING WITH YOU ALL

9    ON THE NEXT THING THAT WE HAVE AND APPRECIATE YOU ALL WORKING

10   WITH ME ON THIS TODAY.

11           MR. CORSO:  THANK YOU.

12           THE COURT:  THANK YOU ALL.

13           MR. RADICS:  THANK YOU, JUDGE.

14               (PROCEEDINGS CONCLUDED)

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1                    C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5            I, DAVID A. RITCHIE, OFFICIAL COURT REPORTER OF THE

6    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

7    GEORGIA, DO HEREBY CERTIFY THAT THE FOREGOING 20 PAGES

8    CONSTITUTE A TRUE TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE SAID

9    COURT, HELD IN THE CITY OF GAINESVILLE, GEORGIA, IN THE MATTER

10   THEREIN STATED.

11           IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS,

12   THE 29TH DAY OF NOVEMBER, 2020.

13

14

15                          _____

16                          DAVID A. RITCHIE
                            OFFICIAL COURT REPORTER
17                          NORTHERN DISTRICT OF GEORGIA

18

19

20

21

22

23

24

25


                     UNITED STATES DISTRICT COURT